# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| RAYMOND LOUIS MARTINOUS, | ) | Case No. 05-30957 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| PATRICIA A. BROWN, Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 07-3019 |
| | ) | |
| COMMUNITY NATIONAL BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

To avoid a preferential transfer under 11 U.S.C. § 547(b), a trustee must establish (1) that the transfer involved an interest of the debtor, (2) that it was made within ninety days before the filing of the debtor's bankruptcy petition, (3) to or for the benefit of a creditor, (4) on account of an antecedent debt, (5) while the debtor was insolvent, and (5) that it enabled the creditor to receive more than it would have if the transfer had not been made and the creditor received only what it would have in a Chapter 7 bankruptcy case.

In this preference action, only the final prong has been contested. The Defendant, Community National Bank ("CNB"), contends that the transfer at issue – a judicial lien it obtained on certain of the Debtor's real property – did not enable it to receive more than it would have in a Chapter 7 bankruptcy because CNB already had an equitable lien on that property as a result of CNB's refinancing of another lender's mortgage on the property. The Trustee, however, maintains that CNB's judicial lien, if not avoided, would enable it to receive more in a Chapter 7 because any equitable lien it may have had on the Debtor's property is avoidable under 11 U.S.C. § 544.[1]

---

[1] The Trustee did not actually plead § 544 as a basis for relief in her complaint, and the Court would be well within its discretion to deny the Trustee's motion for summary judgment on that basis alone. However, that would not be an efficient use of the parties' or the Court's resources, inasmuch as the Trustee would simply amend her complaint and, most likely, file another motion for summary judgment. Moreover, CNB has not objected to the Court's consideration of the issue; to the contrary, CNB's defense is based entirely on its position that it would

Before the Court at this juncture is the Trustee's motion for summary judgment, and for the reasons stated below, the Court finds that the undisputed facts support a finding that CNB's judicial lien constitutes a preferential transfer that the Trustee may avoid under 11 U.S.C. §547(b).[2]

**STANDARD OF REVIEW**

Summary judgment is appropriate when the matters presented to the Court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3]

**BACKGROUND**

Although the Trustee did not provide specific references to the record establishing the facts set forth in her motion for summary judgment, as required by Local Rule 9013-1.H, the Court has been able to assemble from the pleadings the following set of undisputed facts, which are sufficient to enable it to rule on the Trustee's motion.

1. On or about February 8, 1999, the Debtor purchased a residence located at 308 W. 24th Terrace, Pittsburg, Kansas. That property ("Lot 1") is legally described as:

    THE EAST THIRTY-SEVEN (37) FEET OF LOT NUMBERED NINETEEN (19) AND THE WEST FIFTY-SIX (56) FEET OF LOT NUMBERED TWENTY (20) IN BLOCK THREE (3) IN "NORTH JOPLIN HEIGHTS ADDITION" TO THE CITY OF PITTSBURG, CRAWFORD COUNTY, KANSAS ACCORDING TO THE RECORDED PLAT THEREOF.

2. The Debtor financed the purchase of Lot 1 with a loan from Firstar Bank ("Firstar"), and granted Firstar a mortgage on Lot 1 to secure the loan.

---

prevail in a priority contest under § 544. Therefore, the Court will address and resolve the § 544 issue in the context of this preference action, despite the Trustee's failure to include an allegation under § 544 in her complaint. *See Olsen v. Russell* (*In re Klecker*), 81 B.R. 464 (Bankr. N.D. Ill. 1988) (overlooking similar deficiency in preference complaint).

[2] This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 9014.

[3] Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

3. On or about October 2, 2000, the Debtor purchased an adjacent, smaller parcel of land (approximately thirty feet wide) for the purpose of enlarging his residence. That parcel ("Lot 2") is legally described as:

   THE EAST NINE (9) FEET OF LOT NUMBERED TWENTY (20) AND THE WEST TWENTY-ONE (21) FEET IN BLOCK THREE (3) OF THE "NORTH JOPLIN HEIGHTS ADDITION" TO THE CITY OF PITTSBURG, CRAWFORD COUNTY, KANSAS ACCORDING TO THE RECORDED PLAT THEREOF.

4. The Debtor also financed the purchase of Lot 2 with a loan from Firstar, and granted Firstar a separate mortgage on Lot 2 to secure that loan.

5. On or about March 15, 2002, the Debtor obtained a loan from Defendant CNB to refinance the loans secured by Firstar's mortgages on Lots 1 and 2.

6. Upon paying off those loans, CNB intended to secure its loan to the Debtor with a mortgage on Lots 1 and 2, but due to a "clerical error," CNB obtained a mortgage on Lot 1 only.

7. For reasons unclear in the record, Firstar released only the mortgage on Lot 1, although the obligations secured by its mortgages on both lots were satisfied in full.

8. The Debtor defaulted on his obligation to CNB, and on April 7, 2005, CNB obtained a judgment against the Debtor in the District Court of Crawford County, Kansas, in the amount of $97,233.21, plus attorney's fees of $9,614.07.

9. The lien arising from that judgment became effective (*i.e.*, attached to the Debtor's property located in Crawford County) on April 7, 2005.

10. Less than ninety days later, on June 23, 2005, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code.

**DISCUSSION**

As noted above, the resolution of this preference action turns on whether CNB's interest in Lot 2 prior to CNB obtaining a judicial lien on that property was inferior to, or could have been avoided by, the Trustee under 11 U.S.C. § 544. If that interest could have withstood a challenge by the Trustee under § 544, then the judicial lien CNB obtained on April 7, 2005, did not give CNB anything it didn't already have, *i.e.*, status as a secured creditor with recourse against the collateral (now property of the estate) for payment of the debt owed to CNB. Conversely, if the placement

of a judicial lien on the Debtor's property improved CNB's collateral position, then the Trustee may avoid it as a preference under § 547(b).

Section 544(a) provides that, as of the commencement of a bankruptcy case, a trustee shall have all of the rights and powers of, and may avoid any transfer of property of the debtor that is avoidable by, a judicial lien creditor[4] or a bona fide purchaser of real property ("BFP").[5] The rights and powers of a BFP are determined by reference to state law.[6] In this case, the property at issue is located in Kansas, so the Court will look to Kansas law to resolve the priority contest between CNB and the Trustee.

CNB maintains that under Kansas law it obtained an equitable lien against Lot 2 when CNB paid off Firstar's mortgage and that that lien cannot be avoided by the Trustee. CNB relies primarily on two cases – *National City Mortgage Co. v. Ross*[7] and *In re Patton*[8] – in support of this contention. According to CNB, *National City Mortgage* stands for the proposition that a lender who loans money to a debtor for the purpose of discharging a prior valid mortgage may be subrogated to the rights of the prior mortgagee, notwithstanding that lender's failure to obtain a valid mortgage on the property. CNB points to *Patton* for the proposition that the Trustee had notice of the equitable lien arising from CNB's subrogation to Firstar's position because Firstar never released its mortgage on the property. The Court's review of these cases, however, yields a different result than CNB suggests. Essentially, CNB seeks to combine the holdings in *National City Mortgage* and *Patton* to achieve a result that neither case supports.

First, CNB glosses over an important limitation in *National City Mortgage* which specifically precludes the imposition of an equitable lien in favor of CNB in this case. That limitation is contained in the very section of *National City Mortgage* CNB quotes at length.

> In proper cases, equity will protect one lending money secured by a mortgage to pay an existing valid lien. "Where money is loaned upon the security of what is supposed

---

[4] 11 U.S.C. § 544(a)(1).

[5] 11 U.S.C. § 544(a)(3).

[6] *Id.*

[7] 117 P.3d 880 (Kan. Ct. App. 2005).

[8] 314 B.R. 826 (Bankr. D. Kan. 2004).

-4-

>     to be a valid mortgage, but which in fact is a forged and void mortgage, and the money is so loaned for the purpose that a prior valid [*sic*] mortgage may be discharged, which is done, the mortgagee of the void mortgage may be subrogated to the rights of the prior mortgagee, *there being no intervening liens or incumbrances* [*sic*]."[9]

Although the court in *National City Mortgage* did not elaborate on the language emphasized above, its ultimate holding is consistent with that language. In *National City Mortgage*, a mortgagee sought, and the court imposed, an equitable lien because the mortgagee loaned money for the specific purpose of paying off a prior, valid mortgage, and no liens or encumbrances intervened between the time the mortgagee loaned the money and the time it sought to assert its rights as a lienholder. In this case, however, there was an intervening lien /encumbrance on the Debtor's property – namely, the Trustee's hypothetical judicial lien which arose as a matter of law under § 544 as of the date the Debtor filed bankruptcy. Thus, under *National City Mortgage*'s holding, it would not be appropriate to recognize or impose an equitable lien in favor of CNB.

Second, CNB fails to recognize crucial differences between this case and *Patton* which render *Patton*'s holding inapplicable here. In *Patton*, the debtors (proceeding under § 544(a)(3) via § 522(h)) sought to avoid a creditor's alleged mortgage in certain of their real property where the creditor had taken an assignment of a prior mortgage but had failed to record it as of the date the debtors filed bankruptcy. In rejecting the relief sought by the debtors, the *Patton* court held that the debtors could not avoid the creditor's mortgage because under Kansas law, "a recorded and unreleased mortgage is notice of the lien, no matter who owns it," and since the debtors had notice of the creditor's interest, they could not avoid that interest under § 544(a)(3).[10]

CNB attempts to draw a parallel between *Patton* and this case, arguing that CNB's equitable mortgage on Lot 2 should be treated the same as the unrecorded assignment in *Patton*, and that Firstar's unreleased mortgage, like the unreleased mortgage in *Patton*, put the Trustee on notice of CNB's interest in the Debtor's property, thereby defeating her status as a bona fide purchaser and her ability to avoid CNB's lien. But *Patton* differs from this case in two important respects.

---

[9] *National City Mortgage*, 117 P.3d at 884 (quoting *Newcomer v. Sibon*, 239 P. 1110 (Kan. 1925)(emphasis added).

[10] *In re Patton*, 314 B.R. at 832-34 (citing *Bank Western v. Henderson*, 874 P.2d 632 (Kan. 1994)).

First, Firstar never assigned its mortgage to CNB, so the fundamental premise upon which *Patton* is based, *i.e.*, that it doesn't matter who owns a mortgage as long as there is valid notice of it, doesn't apply. CNB was never the owner of Firstar's mortgage; instead of taking an assignment of Firstar's mortgage, it chose to pay off Firstar and (intended to) obtain a new mortgage on the property.

Second, the unreleased mortgage here has been satisfied – as opposed to being assigned to a third party– so the only thing the Trustee was put on notice of was the fact that Firstar had mistakenly failed to release a satisfied mortgage.[11] And that notice is insufficient to put the Trustee on notice of CNB's interest in the property.

In addition to its legal arguments, CNB also contends that the relief sought in the Trustee's complaint should be denied on equitable grounds under 11 U.S.C. §105(a). Specifically, CNB argues that the Trustee should not be allowed to avoid CNB's lien because it would cause an undue hardship on the third party who purchased Lots 1 and 2 from CNB after CNB foreclosed its mortgage on Lot 1.

The Court rejects this argument for three reasons. First, there is no equitable exception to the Trustee's avoidance powers under § 547 or § 544. Section 105(a) may endow the court with general equitable powers, but it does not authorize relief inconsistent with more specific provisions of the Bankruptcy Code.[12] And the cases that CNB cites in support of its equitable plea are all inapposite; they involve the use of § 105(a) to mitigate the effects of § 550 – not § 547 or § 544.[13] Section 550 is not implicated here because no affirmative recovery of the avoided transfer is necessary. Second, CNB's argument assumes facts not in evidence and implicates a party not

---

[11] Although it is possible that upon further inquiry, the Trustee could have discovered the circumstances surrounding the satisfaction of Firstar's mortgage and thereby learned of CNB's interest in the property, it is just as likely that she would have found out only that it was satisfied and should have been released.

[12] *See Johnson v. First National Bank of Montevideo, Minnesota*, 719 F.2d 270, 273 (8th Cir.1983) ("Although a bankruptcy court is essentially a court of equity, its broad equitable powers may only be exercised in a manner which is consistent with the provisions of the Code."). *See also*, *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) (Section § 105(a) "must and can only be exercised within the confines of the Bankruptcy Code.").

[13] The fact that these courts are even looking at equitable exceptions to § 550 reinforces the Court's conclusion that § 105 cannot be used as a defense to § 544 or § 547. Section 550 only comes into play <u>after</u> a transfer has already been determined to be avoidable under §§ 544, 547, 548 or 549.

presently before the Court.  Finally, the Court is not entirely sure that the equities favor the relief CNB requests.  Even if the Court were to rule against the Trustee in this action, there is no evidence (or argument) before the Court as to what CNB intends to do with Lot 2.

Therefore, for the reasons stated above, the Court will grant the Trustee's motion for summary judgment.  A separate order consistent with this Memorandum Opinion will be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 17th day of October 2007.

                /s/   Jerry W. Venters
                United States Bankruptcy Judge

A copy of the foregoing mailed electronically or
conventionally to:
Norman E. Rouse
Robert S. Tomassi